UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

VINCENT JOHNSON                                                                PLAINTIFF

v.                                    No. 3:17-CV-00266-JTR

NANCY A. BERRYHILL,
Deputy Commissioner for Operations,
performing the duties and functions
not reserved to the Commissioner
of Social Security Administration                                              DEFENDANT

## ORDER AFFIRMING THE COMMISSIONER

Vincent Johnson ("Johnson") applied for social security disability benefits on September 9, 2009, with an alleged disability onset date of January 10, 2007. (R. at 283). His disabling impairments related to back problems and headaches. (R. at 341).

On May 5, 2011, after an administrative hearing, the administrative law judge ("ALJ") denied his applications. (R. at 126). On October 20, 2011, the Appeals Council remanded the case because the ALJ had failed to assign weight to the opinion of a treating source and because it was unclear whether the job of fast food worker qualified as past relevant work. (R. at 132–33).

Another administrative hearing was conducted, and, on June 26, 2012, Johnson's applications were again denied. (R. at 148). On March 1, 2013, the Appeals Council again remanded the ALJ's decision because he failed to properly

1

consider a treating source opinion and failed to evaluate and enter into the record a medical source statement from a consultative examiner. (R. at 155–56).

On July 22, 2014, after conducting a third administrative hearing, an ALJ denied Johnson's applications for benefits. (R. at 24). The Appeals Council affirmed the ALJ's decision. (R. at 1).

On March 10, 2014, Johnson filed a Complaint seeking judicial review. (R. at 723). On March 13, 2015, the Court entered its decision reversing and remanding the Commission's decision because the ALJ failed to resolve a conflict between the vocational expert's ("VE") testimony and the *Dictionary of Occupational Titles* ("DOT"). (R. at 732–38).

On December 3, 2015, an ALJ conducted a fourth administrative hearing. (R. at 664-693). During the hearing, Johnson testified that, on April 1, 2013, he returned to full-time work with the City of Blytheville performing trash pickup, as well as landscaping maintenance, which included operating a weed-eater and a zero-turn mower. (R. at 667-68). Based on this change in his employment status, Johnson requested a closed period of disability from his original alleged onset of disability date of January 10, 2007, through March 31, 2013. (R. at 666–69).

On December 24, 2015, the ALJ entered his decision denying benefits because Johnson was not disabled during the closed period of disability. (R. at 598). On February 6, 2017, the Appeals Council declined Johnson's request for review,

making the ALJ's decision final. (R. at 577). Johnson has appealed the Commission's decision to this Court. (Doc. 2).[1]

For the reasons stated below, this Court affirms the ALJ's decision.

I.   **The Commissioner's Decision**

The ALJ found that Johnson had not engaged in substantial gainful activity between January 10, 2007 and March 31, 2013, the alleged closed period of disability. (R. at 589). Based on Johnson's severe impairments of degenerative disk disease, shoulder pain, and osteoarthritis of the hips, the ALJ determined that Johnson had the residual functional capacity ("RFC") to perform light work, except that he could occasionally climb stairs, stoop, crouch, bend, kneel, and balance; frequently reach overhead bilaterally; not climb ropes, ladders, and scaffolding; and perform work that is simple, routine, and repetitive with supervision that is simple, direct, and concrete. (R. at 590).[2] During the alleged closed period of disability, the ALJ concluded that Johnson's RFC precluded him from performing his past relevant work as a groundskeeper (medium), trash collector (very heavy), oil changer (medium), tire repairer/changer (heavy), grinder (medium but possibly performed at

---

[1] The parties have consented in writing to the jurisdiction of this Court. (Doc. 4).

[2] The ALJ also concluded that, because Johnson was 43 years old on January 10, 2017, his alleged onset of disability date, he should be classified as a younger individual age 18-49. (R. at 596).

3

the light level), equipment cleaner (medium), and clean up worker (medium). (R. at 590).

At step five, the ALJ heard testimony from a VE, who testified that a hypothetical person of Johnson's age, with the same work experience and RFC, could perform jobs available in the national economy, which included work as ticketer/tagger or small parts packer. (R. at 597). Thus, the ALJ held that Johnson was not disabled during the alleged closed period of disability between January 10, 2007 and March 31, 2013. (R. at 598).

## II. Discussion

Johnson argues that the ALJ did not adequately explain the weight given to portions of consultative examiners' opinions rendered by Raymond Valdes, M.D., and Dana Kinney, M.D., both of whom were doctors of internal medicine. He also argues that the ALJ did not resolve inconsistencies between their medical opinions and the RFC. These arguments fail for the reasons explained below.

According to Johnson, the ALJ did not adequately discuss why he did not credit the portion of Dr. Valdes's opinion, dated November 18, 2009, in which he opined that Johnson had moderate limitations on prolonged walking. (R. at 522). He also argues the ALJ failed to properly explain why he discredited the portion of Dr. Kinney's opinion, dated October 5, 2012, in which she stated that Johnson was limited in his ability to reach "in all directions." (R. at 575).

4

Johnson contends the error committed by the ALJ in connection with Dr. Valdes's opinion is the same error made by the second ALJ. To the contrary, the second ALJ gave "greater weight" to Dr. Valdes's opinion and directly "incorporated [Dr. Valdes's] findings" into the RFC. (R. at 145–46). Here, the ALJ did *not* incorporate Dr. Valdes's findings in the same way or give as much weight to Dr. Valdes's opinion based on the inconsistencies the ALJ identified between Dr. Valdes's opinion and the opinion of Dr. Kinney. (*Compare* R. at 145–46 *and* R. at 595). Additionally, the second ALJ's decision was remanded because he failed to evaluate *Dr. Kinney's* medical source statement and address the limitations she found. (R. at 155, 573–76). Properly considering Dr. Kinney's medical source statement, along with her medical notes, resulted in important differences between the record as it existed at the time of the second ALJ's decision and the record as it now exists.

Significantly, Dr. Kinney opined that Johnson could stand and/or walk for up to six hours in an eight-hour workday. (R. at 573). In contrast, Dr. Valdes's opinion contained only a general statement that Johnson has "moderate limitations" in prolonged walking, without explaining what he meant by "prolonged walking" or providing the specific number of hours Johnson could "stand and/or walk" in an eight-hour workday. (R. at 522).

Dr. Kinney's opinion on Johnson's ability to stand and/or walk (which the ALJ gave more weight to than the generalized opinions of Dr. Valdes) is consistent with and supports Johnson being able to perform light work. Thus, the Court concludes that the ALJ did not err in the way he weighted the opinions of Dr. Kinney and Dr. Valdes in determining the limitations on Johnson's ability to "stand and/or walk."

Johnson also argues that the ALJ failed to explain why he did not accept what he characterizes as Dr. Kinney's opinion that he had limitations in his ability to reach *in all directions*. In making this argument, Johnson relies entirely on the way Dr. Kinney completed a check box form to contend that she found he could not reach "in all directions." (R. at 575). The *only box* on the form for *any* reaching limitations was the box Dr. Kinney checked, which reflected reaching limitations "in all directions." This forced Dr. Kinney to check that box if she found Johnson had any reaching limitations.

However, in her examination notes, Dr. Kinney makes clear that it was *not* her opinion that Johnson had reaching limitations in "all directions." Rather, Johnson had "some stiffness in right shoulder and slightly damaged dexterity of his right thumb." (R. at 575). According to her notes, those limitations "*could present functional impairment with heavy lifting but likely would not present any functional impairment with light duty type labor.*" (Emphasis added.) (R. at 572).

6

Finally, as the Commissioner argues, there is no evidence in the record that supports Johnson's contention that he had reaching limitations in "all directions." As Johnson testified, in 2012, he could reach straight out with both arms and reach and bend at the elbow. (R. at 72–73). It is also notable that Johnson testified at the most recent hearing that, while his allegedly disabling limitations have not improved, he has returned to full-time work. (R. at 672–73).

The Court concludes that the ALJ's RFC determination reasonably interpreted and relied on Dr. Kinney's opinion. As the Eighth Circuit noted in *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001): "It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians."

In this case, the ALJ properly resolved conflicts in the evidence and reasonably interpreted the opinions of Drs. Valdes and Kinney. Further, the ALJ sufficiently explained his reasons for accepting and discounting portions of their opinions by noting the inconsistencies between the different opinions. Thus, the Court concludes that the ALJ's RFC determination is supported by substantial evidence on the record as a whole.

## III. Conclusion

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial

7

evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477. The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing. The Court concludes that the record as a whole contains ample evidence that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court further concludes that the ALJ's decision is not based on legal error.

It is so ordered this 17th day of January 2019.

_____
UNITED STATES MAGISTRATE JUDGE